UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| _____ | § | |
| Ahmad Al Khafaji,  Ahmad Abdulreda and Robert Stahl, on behalf of themselves and those similarly situated, | § § § § | CASE NO. |
| Plaintiffs, | § | |
| vs. | § § | |
| MICROSOFT CORPORATION, a foreign Corporation doing business in Florida | § § § | **DEMAND FOR JURY TRIAL** |
| Defendants | § § | |
| _____ | § | |

**COMPLAINT**

Plaintiffs, on behalf of themselves and those similarly situated as owners / users of Windows 7, 8 and its predecessor operating systems complain against Microsoft Corporation ("Microsoft" or "Defendant") as follows:

**NATURE OF ACTION**

1.      This is an action for multiple violations of the CAN-SPAM Act (Controlling the Assault of Non-Solicited Pornography and Marketing Act), Pub. L. No. 108-187, §1, 117 Stat. 2699 (Dec. 16, 2003) (hereinafter CAN-SPAM), for violations of the Junk Fax Prevention Act (JFPA) Pub. L. 109-21, 119 Stat. 359, for multiple violations of the Federal Trade Commission Act 15 U.S.C. §§ 41-58, as amended (hereinafter FTCA) and for violations of the Clayton Antitrust Act of 1914, 15 U.S.C. §§ 12–27,29 U.S.C. §§ 52–53), and possibly other Federal Laws that will be uncovered during the course of discovery and added herein.

2.      Plaintiffs, and each of them, were not informed of the true nature of the so-called 'Free' offer of Windows 10 operating system in violation of the provisions of statutes cited.

3.      Defendant failed to inform Plaintiffs of the true nature of the Windows 10 system, the possible negative effects of the system and the procedures to reverse the installation of the Windows 10.

## JURISDICTION AND VENUE

4.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      The jurisdiction of this court for the First Cause of Action is invoked pursuant to the Clayton Antitrust Act of 1914, 15 U.S.C. §§ 12–27,29 U.S.C. §§ 52–53) and also invoked pursuant to Federal Trade Commission Act 15 U.S.C. §§ 41-58, as amended.

6.      Venue is proper under 28 U.S.C.§ 1332(a)(2) in that a substantial part of the events or missions giving rise to the claim occurred in this judicial district.

## PARTIES

7.      The plaintiffs, Ahmad Al Khafaji, Ahmad Abdulreda and Robert Stahl (hereinafter "Plaintiffs") are natural persons currently residing in the state of Floridaand institute this suit on behalf of themselves and on behalf of other users / owners of Microsoft Windows 7 operating systems and previous versions of Windows operating systems.

8.       Defendant is a corporation organized and existing under the laws of the state of Washington and has a principal place of business at One Microsoft Way, Redmond, WA 98052-6399. Defendant is a well-known international company and manufacturer of software, computer hardware and related goods, and markets such goods to residents of the United States and the State of Florida.

**FACTUAL BACKGROUND**

9.       Microsoft is the prominent provider of computer operating systems. Their various

Windows systems account for 85% of the systems in use throughout the world. Defendant has

sold more than 2 billion Windows operating systems in various editions. (See Exhibit 1 which

illustrates Defendant's market share as of April 2016)

10.      As part of these systems, Defendants offer "updates" to the systems which are

refinements to the systems and are part of the software package that is offered by Defendant. The

consumer has the ability (option) to turn these updates off.

11.      Defendant gains access to the consumer's computer for these updates via the

consumer's use of internet.In general these updates are welcome in that they address technical or

security matters.  Defendant however takes advantage of their access to their customer's

computer and places unrequested icons on the consumer's computer.

12.      Defendant places 'Windows' icons on the consumer's personal computer (PC)

that lead to the offer a 'Free' Windows 10 installation. The first icon is placed in the lower right

corner of the toolbar if the toolbar is positioned on the bottom of the monitor. If the popup

(described below) is dismissed by the user by clicking on the "✘" then Microsoft places a new

and larger Windows icon on the left portion of the toolbar. (See Exhibit 2 for an illustration of

the icons and their placement.)

13.      If the user clicks on the Windows icon a popup box appears on the monitor screen

and the user is offered a 'Free upgrade" to Windows 10. The only options that appear on this

screen are to: "Upgrade Now" or "Upgrade Tonight". The option boxes are shaded and appear to

be the only option available to the user. There is also an "**✗**" to dismiss the popup. However,

even when a user clicks on the "**✗**", the popup box will appear autonomously and of its own

volition during the course of the day. More recently a new popup box has appeared which also

expects you to "schedule an upgrade" - more or less presuming you want one.(See Exhibit 3for

illustrations of the popup boxes.)

14.     Typically when an offer is made on the internet for goods, information or

services, the target of the offer is given an option – and a box or circle to click on – verifying

something like:❏YES, SEND ME SPECIAL OFFERS or ❏NO, THANKS. The Windows 10

popups have no provision for their refusal or removal. Similarly the icons on the toolbar show no

provision for removal and are, in fact, very difficult to remove. The user has to resort to seeking

professional IT help or searching the internet for procedures to remove the icon (which

apparently do not always work).

15.     Defendant has been making this 'Free' offer since July 29, 2015 and it is set to

expire on July 28, 2016. In the past Defendant's marketing program was mercenary and profit

driven. Plaintiffs do not accept that Microsoft is giving away a new operating system out of

altruism or good fellowship. Instead it appears that the 'gift' of the Windows 10 is somewhat

self-aggrandizing on the part of Defendant. A consumer might well be suspicious of Defendant's

motives.

16.     Previously when Defendant developed a Windows operating system they would

sell it to the actual consumer or a purveyor of computers who would install it on the computers

that the company sold. This is how they made their money. Defendant offers no real explanation

for its largesse in this free offer, but the explanation seems to lie in that the Windows 10 system

has a link to other Microsoft products and by its installation seems to obviate the free aspect of

some previously installed programs or functions of the other Windows systems. This seems a

logical explanation as Defendant seems to have great acute business acumen, (See Exhibit 4 for a

discussion of why Windows 10 is not really 'Free')

17.     Therefore, Defendant allows consumers - with the click of a button – the

opportunity to get a valuable operating system for nothing. Allegedly the Windows 10 installer

genie checks the donee computer for compatibility; it does not, however, check the condition of

the PC and whether or not the hard drive can withstand the stress of the Windows 10 installation.

Many consumers have had their hard drive fail because of the Windows 10 installation. (See

Exhibit 5 which represents a detailed and professional recounting of the problems caused by the

Installation of Windows 10 and also charges that Microsoft is "Hijacking" computers)

18.     A great number of people have installed the Windows 10 system inadvertently or

without full realization of the extent of the download. Once downloaded the Windows 10 system

does not have an option for its deletion. Admittedly, the program can be deleted but it takes a

significant effort to find out how to do so; a typical user will not have the expertise to remove the

system without outside help. Also, a user has only 30 days to find out how to delete the Windows

10 application or else it becomes permanent. The majority of PC users are not highly skilled in

computer arts and want their computers to function simply and without complication.

19.     Plaintiffs believe that a great number of these programs have been installed by

accident by users who really did not know what they were getting into but were not able to evade

or avoid the icons beckoning consumers to the 'Free' Windows system. Additionally it seems

that the Windows 10 update is capable of installing itself. (See again Exhibit 5)

20.     The Plaintiff's Windows 10 marketing technique is reminiscent of the story line in science fiction films like *Terminator* which have a scenario where the computers start functioning autonomously. Microsoft's intrusion on a user's PC is not only an invasion of privacy but also represents a conversion of a person's property.

21.     Plaintiffs understand that the Windows 10 upgrade is reversible but insists that less than 10% of users have the expertise to reverse the process or disengage the Windows 10 promotion. If a user waits too long – Defendant allows 30 days to retract the upgrade – then the upgrade is irreversible. Defendant insists on the so-called upgrade despite the fact that many users are comfortable with their current systems and do not want to learn how to address a new system that is entirely different.

22.     Plaintiffs are not about to criticize Defendant's prowess in devising computer operating systems; Plaintiffs believe that Microsoft is being not only presumptuous in offering the Windows 10 system in this manner but is also disregarding the legal safeguards of its customers. Plaintiffs feel that the offer of the Windows 10 system – without a clear way of reversing its download – disregards certain rights and freedoms of the user.

23.     Defendant has failed to recognize that many users do not like the new system which, to users of Windows 7 and previous versions of Windows, appears more complex and reliant on touch screens and other nuances. Defendants appear to think that everyone should appreciate this system because it is new.

24.     Defendant's most egregious attack on the consumer is the unilateral download of the Windows 10 system. It is very disconcerting and somewhat harrowing to have a message appear all of a sudden on your computer that commands: "DO NOT TURN OFF YOUR

COMPUTER WHILE WINDOWS 10 IS BEING DOWNLOADED". This is the type of message that appears on the monitor without warning and without the user have done anything. Of course, the way to stop this download is do what the message forbids and turn off you computer – immediately! If you hesitate or try to find another option, you will have the Windows10 installed in a matter of minutes.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF CAN-SPAM)

25.     Plaintiffs hereby re-allege and incorporate by reference herein each allegation set forth in paragraphs 1 through 24 above as if fully set forth herein, and further allege that Defendant's transmittal of the Windows 10 offer violated the requirements of CAN-SPAM Act in the following and other respects:

a. By failing to provide an unsubscribe option;

b. By failing to make known the required disclosure as to the extent of the incoming operating system and its possible deleterious effects on the Plaintiffs' computers.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF JUNK FAX ACT)

26.     Plaintiffs hereby re-allege and incorporate by reference herein each allegation set forth in paragraphs 1 through 25 above as if fully set forth herein, and further allege that Defendant's transmittal of the Windows 10 offer violated the requirements of Junk Fax Prevention Act in the following and other respects.

27.     Plaintiffs suggest that the unrequested appearance of the Windows 10 icon and popup are analogous to the unrequested facsimiles prohibited by the Junk Fax Act. That is, the Junk Fax Act prohibits sending unsolicited offers unless the recipient and sender have an

Established Business Relationship (EBR). While the Plaintiff class may have a computer which runs the Defendant's operating system there is no established <u>Business</u> relationship.

28.     Plaintiffs contend that the unsolicited icons and pop=ups sent to users are not a free offer but rather represent a business enhancement for Defendant. The offer sent by defendant does not come as a paper fax; many faxes do not actually have hard copies. A facsimile can be sent and / or received by a computer or a wireless device. Thus the manner of transmission is the same for both a facsimile and the offer sent by Defendant to a Windows user.

29.     Defendant's offer is not sent by regular mail it is transmitted to the user via either the user's phone line, digital subscriber line (DSL) or a wireless communication system. In all cases the receipt of the offer is via a system that replicates the sending of a facsimile. As part of the Junk Fax Act the sender of a commercial facsimile must include "at least one cost-free mechanism for transmitting an opt-out request". As we have seen that the Defendants do not give the recipient the option to opt out and in fact Microsoft uses a subterfuge to get users to adopt the Windows 10 system.

30. The Junk Fax Act prescribes a penalty of $500.00 per facsimile received. This penalty is per occurrence. The penalty may be trebled at the court's discretion is if it finds the defendant violated the statute "willfully" or "knowingly." The Defendant's message appears every time a computer is turned on. A computer is usually used every day or at least 5 times a week.

**THIRD CAUSE OF ACTION**
**(FEDERAL TRADE COMMISSION ACT)**

31.   Plaintiffs hereby re-alleges and incorporates by reference each allegation set forth in paragraphs 1 through 30 above and further allege that Microsoft's transmittal of the Windows 10 offer violated the requirements if the Federal Trade Commission Act 15 U.S.C. §§ 41-58, as amended.

32.   Plaintiffs confirm that the Federal Trade Commission (FTC) is empowered to act in the interest of all consumers to prevent deceptive and unfair acts or practices. Specifically, the FTC defines a presentation made to consumers as deceptive if it is not clear (not misleading) and will affect consumers' behavior about a product or service. (See Exhibit 6, Pages 1and 4 of the Advertising and Marketing Internet Rules of the Road.PDF publication by the FTC)

33.   Defendant Microsoft by nature of its superior standing and expertise uses its position and access to the consumer's PC to entice a decision without giving the consumer full knowledge of the consequences. Perhaps more than anyone else Defendant should have known the consequences and understood the pitfalls of installing Windows 10 on older PCs.

34.   The FTC goes on to say that an act or practice is unfair if the injury it causes, or is likely to cause, is "substantial not outweighed by other benefits and not reasonably avoidable." As has been shown, even computer literate professionals have difficulty reversing the installation of Windows 10, nor does Defendant fully acknowledge that the installation has significant possibility for harming the consumer's computer

35.   In regard to Free Products, the FTC mandates that: "Ads (for Free Products) should describe all the terms and conditions of the free offer clearly and prominently". Defendant's approach to this is to exaggerate the "Free" aspect of Windows 10 and - in some cases - to unilaterally install the product.

## FOURTH CAUSE OF ACTION
## (CLAYTON ANTITRUST ACT)

36.      Plaintiffs hereby re-allege and incorporate by reference herein each allegation set forth in paragraphs 1 through 35 above as if fully set forth herein and further allege Defendant's transmittal of the Windows 10 offer violated the requirements of  the Clayton Antitrust Act ,15 U.S.C. §§ 12–27,29 U.S.C. §§ 52–53),

37.      In making available a 'Free' product Defendant seeks to maintain their quasi-monopolistic position of dominance in the marketplace in a manner prohibited by the Clayton Act. With the widespread dissemination of Windows 10 the Defendant seeks to maintain its position of dominance in the marketplace. The Windows 10 system adds yet another dimension to its extant body of operating systems and in effect keeps the consumer 'in the fold' while gaining a captive audience for Defendant's ancillary products.

38.      Defendant violates the Clayton Act prohibition on this sort of monopolistic captivity (the Act prohibits "captive dealings") and the Act also prohibits "tying" or pointing a consumer towards another of its products. The Act prohibits these activities being practiced by Microsoft which lessen competition. (Act Section 3, codified at 15 U.S.C. § 14)

39.      Plaintiff has already shown that Microsoft has an 85% share of the market. Certainly 'giving away' a free system is going to make other companies less competitive. The widespread dissemination of Windows 10 by Defendant ensures that it can then steer consumers to its related applications. Similarly, by 'upgrading' the previous Windows systems to Windows the Defendant essentially and effectively subjugates the previous systems to the status of being obsolete or lacking and now makes the purchase of Windows 10 more or less mandatory.

40.     Defendant's strategy is to give Windows 10 aura of the newer and better system and its inevitability and thus Microsoft can then neglect, denigrate or discontinue updates and service on the previous generations of Windows operating systems (as they have done with Windows XP) to concentrate on Windows 10. Once established the Windows 10 system will no longer be 'Free'.

41.     As Plaintiffs had mentioned, while the user was on the internet Defendant would add updates to the operating system (Windows 7, Windows 8, etc.). The user had the option to not receive these updates. The Windows 10 system will not allow you to stop these updates; they are mandatory and automatic. Plaintiffs contend that this is both pretentious and illegal in that it represents a conversion of your property. Defendant effectively assumes control of a consumer's PC. Defendant has already shown its willingness to trespass on Plaintiffs' property in the forcible installation of Windows 10 without permission. See Exhibit 7 which relates the unstoppable nature of Windows 10 updates.)

42.     Defendant has tried to make the filing of a class action unavailable to consumers. With the inception of Windows 8 (and subsequently Windows 10…there was no Windows 9) Microsoft introduced a restrictive covenant in their End User License Agreement (EULA) that prohibits the filing of a class action lawsuit against Defendant. Microsoft's restriction on class actions reads as follows: *"Disputes covered—everything except IP. The term "dispute" is as broad as it can be. It includes any claim or controversy between you and the manufacturer or installer, or you and Microsoft, concerning the software, its price, or this agreement, under any legal theory including contract, warranty, tort, statute, or regulation, except disputes relating to the enforcement or validity of your (sic), your licensors', our, or our licensors' intellectual property rights"*. (See Exhibit 8 for the full wording of the EULA)

43.     The EULA for Windows 7 and previous versions of Windows did not include the restrict covenant against class actions (See Exhibit 9for the full text of the Windows 7 EULA).

44.     Plaintiffs contend that the Defendant's attempt at obviating the consumers' bringing of a class action is voided by the intentional tortuous actions of Defendant.

45.     Plaintiffs assert that the owners of Windows 8 and Windows 10 should also have access to the class action because Defendant's actions represent an intentional tort and thus Defendant cannot claim the protection of the laws when it is in violation of the law. It has been settled by the Florida Courts and other jurisdictions that a party cannot contract against liability for his own fraud in order to exempt him from liability for an intentional tort, and any such exculpatory clauses are void as against public policy. *Mankap Enterprises, Inc. v. Wells Fargo Alarm Services, Inc.*, 427 So. 2d 332 (Fla. 3d D.C.A. 1983, *Oceanic Villas v. Godson,* 148 Fla. 454, 4 So.2d 689 (1941)

46.     Plaintiffs contend that the restrictive covenant is not enforceable as it has become an exculpatory clause that is intended to excuse Defendant from behavior that is illegal and against public policy.

47.      Plaintiffs contend that the Defendant Microsoft's restrictive covenant is not enforceable because Plaintiffs were coerced into adopting Windows 10 or had Windows 10 installed in various unintentional manners with subsequent damage to their computers after which Plaintiffs sustained unnecessary and avoidable stress, confusion, loss of time and significant monetary damage all at the hands of Defendant.

## INJURY-IN-FACT AND DAMAGES

By reason of, and as a direct and proximate result of, Defendant's violation of the of the rights and legal protection of Plaintiffs, Plaintiffs and all of them within their class, have

suffered. While Defendant is the premier vendor of operating systems and while these systems certainly are competent and meritorious, Microsoft's marketing scheme falls short of certain protections which must to be afforded to the Plaintiff Class. Microsoft was well aware (from years of experience) that some computers would be damaged by forcing updates and regardless of that fact chose to do so anyway; as they no doubt calculated it would be a small percentage of the whole and they could get away with it.

Microsoft engaged in a reckless and negligent premise with catastrophic consequences for some of Defendant's customers whose devices were rendered useless and incapable of normal recovery operations. The precise amount of damages to the Plaintiffs has not yet been calculated due to the large and far ranging group of consumers which comprise the plaintiffs to this lawsuit but will be calculated at an appropriate time during this case. However, the estimates are that the damages will be in tens of millions of dollars.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves individually and on behalf of Plaintiff Class members pray for relief and judgment against Defendant, as follows:

1) That the Court determine that this action may be maintained as a class action; and determine whether Windows 8 and Windows 10 users may join the class action;

2) Appointment of Plaintiffs as the Class Representative and their counsel of record as Class Counsel;

3) Pre-judgment and post-judgment interest as provided by law or allowed in equity;

4) For nominal damages;

5) For injunctions against Defendant, prohibiting any further acts in continuance or perpetuation of any actions or procedures prohibited by the Federal Trade Commission Act or the CAN-SPAM Act as unlawful anti-solicitation agreements;

6) For restitution of all monies due to Plaintiffs, and the Plaintiff Class, and for harm and compensatory damages caused by the intrusion of Windows 10;

7) For a determination as to the amount and frequency of penalties under the Junk Fax Act and a determination if treble damages are appropriate therein;

8) For a determination as of the treble damages available under the Clayton Antitrust Act

9) For costs of suit and expenses incurred herein;

10) For reasonable attorneys' fees;

11) For all such other and further relief that the Court may deem just and proper.

Dated: July 22. 2016                                  Respectfully submitted,


**LAW OFFICE OF RICHARD G. CHOSID, ESQ., P.A**

*/s/ Richard G. Chosid*
Florida Bar No. 13432
Attorney for Plaintiffs
*filings@chosidlaw.net*
5550 Glades Road, Suite 200
Boca Raton, FL 33431
(954) 351-1500 fax (805) 200-3760